UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

STEVEN CLARK,

      Plaintiff,

v.                                                                     Case No:  2:12-cv-167-FtM-SPC

COMMISSIONER OF SOCIAL
SECURITY and SSA,

      Defendants.

_____/

## ORDER

      This matter comes before the Court on Plaintiff Steven Clark's Complaint (Doc. #1) Seeking Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying the Claimant's Claim for Supplemental Security Income and Social Security Disability Benefits filed on March 22, 2012.   A Consent Form (Doc. # 13) was signed by the Parties indicating their agreement for jurisdiction in this matter to be exercised by the United States Magistrate Judge and filed on July 24, 2012.  The Parties' consent was approved by the District Court on July 25, 2012. (Doc. # 15).  The Plaintiff filed his Memorandum of Law in Opposition to the Commissioner's Decision (Doc. # 17) on September 24, 2012.  The Commissioner filed its Memorandum of Law in Support of the Commissioner's Decision (Doc. # 18) on November 21, 2012.  Thus, the Motion is now ripe for review.

## FACTS

### Procedural History

Plaintiff filed an application for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income on September 16, 2009, alleging the onset date of disability as May 28, 2008. (Tr. 150-59).  Plaintiff's application was initially denied on January 13, 2010 and upon reconsideration on May 28, 2010.  (Tr. 122-29, 135-40).  On June 14, 2010, Plaintiff filed a timely request for hearing by an Administrative Law Judge (ALJ).  (Tr. 141-143).  ALJ Ronald Robbins held a hearing on May 31, 2011.  (Tr. 36-58).  The ALJ issued an unfavorable decision on September 20, 2011.  (Tr. 14-32).  Plaintiff filed an appeal of the ALJ's decision on October 22, 2011.  (Tr. 147-48).  The Appeals Council denied the Plaintiff's request for review of the ALJ's decision on January 17, 2012.  (Tr. 1-3).  Having exhausted all administrative remedies, Plaintiff filed this Complaint with the Court on March 23, 2012.  (Doc. #1).  Thus, the case is ripe for review under 42 U.S.C. § 405(g).

### Plaintiff's History

Plaintiff was born June 20, 1966.  (Tr. 150).  At the time of the alleged onset date, he was forty-one years old.  (Tr. 150).  He has past relevant experience as a bartender.  (Tr. 176). Plaintiff has a twelfth grade education level and can read and write in English.  (Tr. 179).

### Medical and Psychological History

Plaintiff was involved in a motorcycle accident on May 28, 2008.  (Tr. 213).  Plaintiff sustained a severe open fracture to his right lower extremity and was treated at Lee Memorial Hospital.  (Tr. 213).  Robert A. Follweiler, D.O., the on-call attending orthopedic surgeon at the hospital diagnosed Plaintiff with a right grade III open distal tibia-fibula fracture. (Tr. 223). Plaintiff underwent irrigation and debridement of the right open distal tibia fibula fracture.  (Tr.

223-24).  CT scans taken that night of Plaintiff's head, cervical spine, abdomen and pelvis were negative.  (Tr. 222).  Dr. Follweiler talked to the Plaintiff about the nature of his injury and explained that there is a high likelihood of infection and amputation.  (Tr. 245).  However, Dr. Follweiler opined that because Plaintiff was neurovasularly intact, salvaging the limb was a more favorable prognosis.   (Tr. 245).   Dr. Follweiler performed irrigation on the right leg and debridement of large grade III open fracture including the bone with application of external fixation.  (Tr. 223).  Dr. Follweiler noted that Plaintiff's prognosis was guarded and that he would need repeated irrigation and debridement and eventual definitive fixation if they were able to salvage the limb. (Tr. 224).

On May 30, 2008, Patrick Leach, M.D., determined that Plaintiff required internal fixation of the right fibula and performed the procedure.  (Tr. 214, 227).  On June 5, 2008, William S. Wittenborn, M.D., a plastic surgeon, performed a skin graft of the right lower extremity.   (Tr. 215).   On June 17, 2008, Plaintiff was discharged from the hospital and instructed to monitor his wound and follow up with Dr. Leach.  (Tr. 216).  On June 24, 2008, Plaintiff followed up with Dr. Leach where he was prescribed physical therapy and Ultram for pain control.  (Tr. 294).

On October 6, 2008, Plaintiff developed streptococcus osteomyelitis, which became so widespread and severe in combination with bone loss, that below-knee amputation was required. (Tr. 275).  On October 8, 2008, Dr. Leach amputated Plaintiff's right leg, below the knee.  (Tr. 281-84).  On November 4, 2008, the Plaintiff was admitted to Lee Memorial Hospital where Dr. Leach assessed that Plaintiff had muscle necrosis at his amputation site. (Tr. 289).  Dr. Leach performed irrigation and debridement of the stump on November 8, 2008.   (Tr. 268).   In

February 2009, Dr. Leach opined that Plaintiff's stump was healthy and referred Plaintiff to a prosthetist. (Tr. 285-86).

An examiner for the Social Security Administration contacted Plaintiff on December 7, 2009 to schedule an examination regarding his claim. (Tr. 209). Plaintiff described his daily activities and living, which required the use of an electronic scooter to move around his home and crutches outside the home. (Tr. 209). Plaintiff further stated in his Disability Report for the Social Security Administration that he used an electric cart when he shopped and required the assistance of friends to carry groceries into the house. (Tr. 175). Plaintiff denied any nerve problems or mental disorder. (Tr. 209). The examiner concluded that the call ruled out the need for evaluation of a mental impairment. (Tr. 209). On January 2, 2010, Stanley Rabinowitz, M.D., examined Plaintiff. (Tr. 295). Dr. Rabinowitz noted that Plaintiff was not fitted with a prosthesis and complained of right distal lower extremity phantom pain but that his osteomyelitis was resolved. (Tr. 295). Dr. Rabinowitz also noted that Plaintiff had mild difficulty getting on and off the examining table, could not perform heel and toe walking, squatting, or hopping. (Tr. 296). He further opined that Plaintiff was oriented, his memory was intact, and that he displayed appropriate behavior. (Tr. 296).

On January 21, 2010, Dolores Delgado, M.D., treated the Plaintiff at PanAmerican Internal Medicine for severe leg pain. (Tr. 313-31). Dr. Delgado stated that Plaintiff complained of eye problems, fatigue, joint pain, lower back pain, myalgia, weakness, anxiety and depression. (Tr. 320-21). Dr. Delgado noted a mobility problem as a result of Plaintiff's amputation and unusual visual disturbance. (Tr. 321). Dr. Delgado referred Plaintiff to Home Health Agency for evaluation for physical therapy and ophthalmology for further evaluation with visual problems. (Tr. 321).

On February 18, 2010, Dr. Delgado treated Plaintiff with Lovastatin and Meloxicam for his chronic pain. (Tr. 324). On March 11, 2010, Dr. Delgado reported that Plaintiff complained of severe leg pain, stated that the Meloxicam did not resolve his pain, and it caused stomach pain on Plaintiff's follow-up examination. (Tr. 325). Dr. Delgado noted that Plaintiff had chronic pain due to trauma. (Tr. 326). On May 25, 2010, Dr. Delgado reported a similar assessment upon Plaintiff's visit. (Tr. 313-14). On May 25, 2010, Dr. Delgado completed a form for the Office of Disability Determinations and stated that Plaintiff suffered from gait disturbance, chronic pain, joint deformity, amputation, contractures, soft tissue injury, and limited range of motion. (Tr. 316). She also stated that Plaintiff could not do normal activities during daily living, walks with crutches, has a grip strength of 4 out of 5, and is able to perform fine and gross manipulation on a sustained basis. (Tr. 316).

On February 24, 2010, A. Habib Azizi, O.D., of West Florida Eye, examined Plaintiff upon referral for ophthalmology. (Tr. 310). Dr. Azizi diagnosed Plaintiff with myopia and pterygium, astigmatism and presbyopia. (Tr. 311). On March 11, 2010, Plaintiff reported that his vision had improved. (Tr. 308).

In May 2010, James Patty, M.D., a reviewing agency physician, stated on Plaintiff's Residual Functional Capacity (RFC) Assessment form that Plaintiff could lift twenty pounds occasionally and ten pounds frequently, stand and/or walk at least two hours in an eight-hour workday, but could never push or pull with his right lower extremity. (Tr. 333-34). Dr. Patty opined that Plaintiff could occasionally climb ramps and stairs, ropes, or scaffolds. (Tr. 335). He also stated that Plaintiff should avoid moderate exposure to hazards, such as machinery and heights. (Tr. 337).

At the hearing conducted by the ALJ on May 31, 2011, the Plaintiff testified that he could walk "maybe a block" and could stand in line for fifteen or twenty minutes. (Tr. 43). Plaintiff stated that he was taking Lortab for pain, two or three times a month. (Tr. 44-45). Plaintiff described his pain as an "eight" out of ten pain scale. (Tr. 50). He also stated that he has phantom pains in his leg. (Tr. 52). Plaintiff testified that he had problems sleeping and considered himself depressed. (Tr. 45-46). Plaintiff also testified that he has anxiety and panic attacks, feelings of guilt or worthlessness, and has crying spells about "once a month." (Tr. 45-46). The ALJ stated that Plaintiff needed a psychological exam. (Tr. 57).

On July 8, 2011, Cheryl Kasprzak, Psy. D., performed a psychological evaluation on Plaintiff at the request of the Office of Disability Determinations. (Tr. 342). Dr. Kasprzak noted that Plaintiff used a cane to ambulate, was clean, and casually dressed. (Tr. 342). She noted that Plaintiff stated that he had no history of psychiatric or mental health care. (Tr. 343-44). Plaintiff told Dr. Kasprzak that he is able to shower, dress, and shave himself without assistance. (Tr. 344). He also stated that he is able to cook for and feed himself simple meals, wash dishes by hand, sweep, vacuum floors, clean the bathroom weekly, change bed linens twice month, do two loads of laundry and grocery shop monthly. (Tr. 344).

In the Mental Status Examination, Dr. Kasprzak noted that the Plaintiff's psychomotor activity was moderately retarded and that his intellectual ability was below average range. (Tr. 344). She noted that Plaintiff's abstract reasoning ability was in the average range and that his immediate memory was within normal limits. (Tr. 344). Dr. Kasprzak also stated that Plaintiff's attention and concentration were fair. (Tr. 344).

Dr. Kasprzak administered 10 subsets of the Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV), and concluded that Plaintiff's intellectual ability was below average. (Tr.

344-45).    Additionally, Dr. Kasprzak administered the Minnesota Multiphasic Personality Inventory 2 (MMPI-2) to Plaintiff and stated that the MMPI-2 profile was invalid and unreliable, as the Plaintiff was not being honest and utilized "excessive denial, defensiveness and/or repression in his test taking attitude."  (Tr. 346-47).  Dr. Kasprzak noted that the L validity scale suggested Plaintiff has little or no insight into his motivation and tried to create a favorable impression with regards to morals, and was unoriginal in thinking and problem solving.  (Tr. 347).  The F validity scale suggested the Plaintiff endorsed symptoms relevant to a specific problem and functions adequately.  (Tr. 347).  The K validity scale suggested that Plaintiff was adjusting well psychologically, socially, enthusiastically and verbally. (Tr. 347).

Dr. Kasprzak took into account Plaintiff's defensiveness and excessive use of denial and stated that Plaintiff's code type is 2-7.  (Tr. 347).  She noted that individuals with code type 2-7 typically report anxiety, tension, overreact to minor stress, speak of somatic complaints, have poor memory and concentration, experience sleep disturbance, fatigue, and feelings of depression.  (Tr. 347). She further stated that the most common diagnoses for code type 2-7 are depressive and anxiety disorder, or obsessive-compulsive disorder.  (Tr. 347).  Dr. Kasprzak assigned Plaintiff a global assessment functioning (GAF) score of 50, and stated that his prognosis was guarded for gainful employment. (Tr. 347).

Additionally, Dr. Kasprzak completed a Medical Source Statement of Ability to Do Work-Related Activities.  (Tr. 349). Dr. Kasprzak stated that Plaintiff had no impairment in understanding and remembering simple instructions, carrying out simple instructions, and ability to make judgment on simple work-related decisions.  (Tr. 349).  However, Dr. Kasprzak stated that Plaintiff had a mild impairment in understanding and remembering simple instructions, carrying out simple instructions, and ability to make judgment on simple work-related decisions.

(Tr. 349).   She also noted that Plaintiff had no impairment in interacting appropriately with supervisors, co-workers, and the public, as well as responding to changes in a routine work setting. (Tr. 349).

<u>*Administrative Law Judge's Decision*</u>

After reviewing all of the evidence and testimony, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act from May 28, 2008.  (Tr. 29).   In reaching this decision, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2010.  (Tr. 19).   The ALJ found that the Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (Tr. 19).   Through the last date insured, the ALJ found that the Plaintiff has a severe impairment relating to his history of right tibia fracture complications which resulted in below the knee amputation with residual lower extremity phantom pain.  (Tr. 19).   The ALJ found that the Plaintiff has a non-severe mental impairment of depression.  (Tr. 20).   However, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 22).

The ALJ found that the Plaintiff has the residual functional capacity (RFC) to perform a wide range of sedentary work as defined in 20 C.F.R. 404.1567(a) and 426.967(a). (Tr. 22). Specifically, the ALJ found that the Plaintiff can lift and carry, and push and pull, up to ten pounds occasionally and less than ten pounds frequently; he can sit for six hours, and stand/walk for two hours, in an eight-hour workday; he can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but can never climb ladders, ropes, and scaffolds; he should avoid moderate exposure to hazards; that he has no manipulative limitations and no communicative, mental, or visual limitations.  (Tr. 22).

The ALJ found that the Plaintiff is unable to perform any past relevant work.  (Tr. 28).  Additionally, the ALJ found that transferability of job skills was not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the Plaintiff had transferable job skills.  (Tr. 28).  The ALJ then considered the Plaintiff's age, education, work experience, and residual functional capacity and found that jobs exist in significant numbers in the national economy that the Plaintiff can perform.  (Tr. 28).

## STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence.  Hibbard v. Commissioner, 2007 WL 4365647 at *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971); McRoberts v. Bowen, 841 F. 2d 1077, 1080 (11th Cir. 1988)).  In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations.[1] 20 C.F.R. §§ 404.1520(a), 404.920(a).  The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence

---

[1] The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability.  The steps are as follows:

*Step 1*.  Is the claimant engaged in substantial gainful activity?  If the claimant is engaged in such activity, then he or she is not disabled.  If not, then the ALJ must move on to the next question.

*Step 2*.  Does the claimant suffer from a severe impairment?  If not, then the claimant is not disabled.  If there is a severe impairment, the ALJ moves on to step three.

*Step 3*.  Does the claimant's impairment meet and equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If so, then the claimant is disabled.  If not, the next question must be resolved.

*Step 4*.  Can the claimant perform his or her former work?  If the claimant can perform his or her past relevant work, he or she is not disabled.  If not, the ALJ must answer the last question.

*Step 5*.  Can he or she engage in other work of the sort found in the national economy?  If so, then the claimant is not disabled.  If the claimant cannot engage in other work, then he or she is disabled.  See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f).

as a reasonable person would accept as adequate to support the conclusion." <u>Hibbard</u>, 2007 WL 4365647 at *2 (citing <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838-39 (11th Cir. 1982)); <u>Richardson</u>, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. <u>Phillips v. Barnhart</u>, 357 F. 3d 1232, 1240 n.8 (11th Cir. 2004).  The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  <u>Foote</u>, 67 F.3d at 1560; <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." <u>Phillips</u>, 357 F. 3d at 1240 n.8; <u>Dyer v. Barnhart</u>, 395 F. 3d 1206, 1210 (11th Cir. 2005).  If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. <u>Lewis v. Callahan</u>, 125 F. 3d 1436, 1439 (11th Cir. 1997).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the case.  42 U.S.C. § 405(g) (sentence four).  The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  <u>Williams v. Commissioner</u>, 407 F. Supp. 2d 1297, 1299-1300 (M.D. Fla. 2005) (citing <u>Keeton v. Dep't of Health and Human Servs.</u>, 21 F.3d 1064, 1066 (11th Cir. 1994)); <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145 (11th Cir. 1991).

## DISCUSSION

Plaintiff sets forth one issue. Plaintiff asserts that the ALJ improperly discounted his allegation of a mental impairment. (Doc. #17, p. 8). In asserting this claim, Plaintiff states that Dr. Kasprzak's consultative exam findings and "Medical Source Statement of Ability to Do work-Related (Mental)" (Medical Source Statement) are inconsistent. Plaintiff further points to Dr. Kasprzak's diagnosis of depressive disorder and the assessment of Plaintiff's global assessment of functioning (GAF) at 50 in alleging that the ALJ discounted his mental impairment. In response, the Commissioner argues the ALJ properly found that Plaintiff's depression as a non-severe impairment is supported by substantial evidence. (Doc. #18, p. 11).

### Whether the ALJ Improperly Discounted Plaintiff's Allegation of a Mental Impairment

The ALJ found that Plaintiff's medically determinable mental impairment of depression was non-severe. (Tr. 20). The determination of whether a mental impairment is "severe" depends on the condition's effect on a claimant's ability to work. "The 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). In the context of a Social Security disability benefits case, a condition is severe if it affects a claimant's ability to maintain employment. See id. A claimant has the burden of proving that her allegations of depression and other mental health issues constitute severe impairments. Nigro v. Astrue, 2008 WL 360654, at *3 (M.D. Fla. Feb. 8, 2008); see also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) ("[A] claimant bears a heavy burden of establishing the existence of a disability [by first showing] that her impairment prevents her from performing her previous work."). Further, "[t]he severe impairment either must have lasted or must be expected to last for at least 12 months." Davis v.

Barnhardt, 186 F. Appx. 965, 967 (11th Cir. 2006) (citing Barnhart v. Walton, 535 U.S. 212, 216, 122 S.Ct. 1265, 152 L.Ed. 2d 330 (2002)).

A severe impairment interferes with a claimant's ability to perform "basic work activities." See Bowen v. Yuckert, 482 U.S. 137, 148, 107 S.Ct. 2287, 96 L.Ed. 2d 119 (1987). The Code of Federal Regulations provides six examples of "basic work activities": (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers, and unusual work situations; and (6) Dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b); Davis, 186 F. Appx. at 966-67.

The ALJ assessed Plaintiff's mental health claim after providing an overview of the relevant medical and psychological evaluations of Plaintiff's mental status.  (Tr. 20).  The ALJ found that Plaintiff's medically determinable mental impairment of depression does not cause more than minimal limitation in the Plaintiff's "ability to perform basic mental work activities and is therefore non[-]severe." (Tr. 20).  In his decision the ALJ stated:

> The claimant's medically determinable impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonservere.  Contrary to a continuing, ongoing severe and disabling impairment, the claimant indicated at the hearing that he was depressed, but stated that he was only depressed about an hour out of the month. Further, the claimant has not been under the care of any psychiatrist or other mental health professional since the alleged onset date, is not taking any psychotropic medications, and has not had any psychiatric hospitalizations since the alleged onset date.   Additional evidence that the claimant's depressive disorder is not severe is that on mental status examinations performed during the claimant's physical examinations the claimant was consistently alert and well oriented.  Further, at his physical examinations the claimant was consistently alert and well oriented.  Further, at his physical consultative examination, when mental disability was not on the line, Dr. Rabinowtiz reported that he was oriented times three, his memory was intact, and his behavior was appropriate.  Notable, during his eye examination, his eye doctor, Dr. A. Habib Azizi, O.D. indicated that on

[the] objective mental status examination the claimant was fully alert and oriented time three and had a fully intact recent memory.  (Exhibits 1F; 4F; 5F/p.2; & 7F/p.3).  Moreover, during a face-to-face interview with disability determination personnel, the claimant showed no difficulty in concentrating, talking, answering, reading or his ability to understand and be coherent (Exhibit 1E).  Notable, the undersigned notes that the State agency did not complete a Psychiatric Review Technique Form which indicates that it did not find evidence of a severe mental impairment.  An individual's description of his impairment and symptoms is, in itself, insufficient to establish the presence of a physical or mental impairment (Social Security Ruling 82-53).  The undersigned finds there is no documentation in the record that substantiates any assertion that the claimant's mental disorder causes him to be unable to perform any form of substantial work activity.

(Tr. 20.)

However, Plaintiff argues that Dr. Kasprzak's consultative examination on July 8, 2011 demonstrates that Plaintiff's depression was severe. (Doc. #17, p. 8).  Plaintiff asserts that the ALJ discounted Dr. Kasprzak's consultative examination report and the accompanying Medical Source Statement.   (Doc. # 17, p. 10).   Additionally, Plaintiff asserts that Dr. Kasprzak's consultative exam findings and Medical Source Statement are inconsistent.

The ALJ did not discount Dr. Kasprzak's consultative examination report and the accompanying Medical Source Statement report.   The ALJ considered Dr. Kasprzak's consultative examination report as a whole and stated that he accorded it great weight. (Tr. 21).

To support his finding and noted above in the ALJ's decision, the ALJ stated that Plaintiff indicated at the hearing that he was depressed only "about an hour out of the month." (Tr. 20).  The ALJ noted that Plaintiff was not under the care of any psychiatrist or other mental health professional, was not taking any psychotropic medications, and did not have any psychiatric hospitalizations since the alleged onset disability date.  (Tr. 20).

The ALJ discussed Dr. Rabinowitz's report which stated that Plaintiff was oriented, his memory was intact, and his behavior appropriate.  (Tr. 20).  The ALJ noted Dr. A. Habib Azizi's report which stated that Plaintiff was alert, oriented and had a fully intact recent memory.  (Tr.

20).    Additionally, the ALJ noted the face-to-face interview with disability determination personnel, where Plaintiff showed "no difficulty in concentrating, talking, answering, reading or his ability to understand and be coherent."  (Tr. 20).  The ALJ pointed out that the State Agency did not complete a Psychiatric Review Technique Form which indicated that it did not find evidence of a severe mental impairment.  (Tr. 20).

Moreover, the ALJ stated that Dr. Kasprzak found that the Plaintiff's mood was mildly anxious and his "affect was within normal limits."  (Tr. 20).  He noted that Dr. Kasprzak's findings that Plaintiff was oriented, his thought content and thought process were within normal limits, speech quality was hesitant and content relevant, psychomotor activity was moderately retarded, and that his intellectual ability was in the below average range.  (Tr. 20).  The ALJ stated that Dr. Kasprzak indicated that the Plaintiff was able to solve a simple math problem and give an accurate meaning of a proverb, abstract reasoning, and that he was able to recall two of three words after a distraction task, and that his remote memory was adequate.  (Tr. 20).  Further, the ALJ noted that Dr. Kasprzak's report stated that Plaintiff denied suicidal or homicidal ideation, plan or intent.  (Tr. 20).

Plaintiff points to Dr. Kasprzak's diagnosis of depressive disorder and the assessment of Plaintiff's global assessment of functioning (GAF) at 50 in her consultative examination. (Doc. #17, p. 9). Plaintiff states that this GAF score implies serious symptoms or serious impairment in social, occupational, or school functioning, contrary to her Medical Source Statement.  (Doc. #17, p. 9).  While GAF scores have been frequently used in Social Security disability benefits determinations, courts have often given them limited weight.  "Reliance upon a GAF score is of questionable value in determining an individual's mental functional capacity."  Gasaway v. Astrue, 2008 WL 585113, at *4 (M.D. Fla. Mar. 3, 2008) (citing Deboard v. Comm. of Soc. Sec.,

211 F. Appx. 411, 415-16 (6th Cir. 2006); see also Wind v. Barnhart, 133 F. Appx. 684, 692 n. 5 (11th Cir. 2005) (noting that the Commissioner of Social Security has indicated that GAF scores have no direct correlation to the severity of a mental impairment); Parsons v. Astrue, 2008 WL 539060, at *7 (N.D. Fla. Feb. 22, 2008) (noting the same conclusion and stating that neither Social Security regulations nor case law require an ALJ to determine the extent of an individuals' mental impairment based only on a GAF score). Even so, a GAF score of 50 has been found to equate to a non-severe impairment as GAF scores are limited in value. See Kelly v. Astrue, 2008 WL 5517637 (M.D. Fla. Dec. 15, 2008). Plaintiff's GAF score of 50 does not indicate a severe mental impairment.

Plaintiff states that Plaintiff scored the 2-7 code on the MMPI-2 which reports that these individuals have anxiety, tension, overreact to minor stress, have poor memory, concentration, fatigue and feelings of depression. (Doc. #17, p. 9-10). However, the ALJ noted that Dr. Kasprzak stated that the MMPI-2 profile was invalid and unreliable as the Plaintiff was "not being honest and utilized excessive denial, defensiveness and/or repression in his test taking attitude." (Tr. 27). The ALJ noted, "while not conclusive, this evidence suggests that the claimant has consciously attempted to portray limitations that are not actually present in order to increase his change of obtaining benefits, and further suggests that much of what the claimant has alleged may be similarly unreliable." (Tr. 27).

Moreover, Dr. Kasprzak's Medical Source Statement report is consistent with her examination findings. The ALJ noted that the Medical Source Statement stated that Dr. Kasprzak administered the WAIS-IV and that the Plaintiff scored in the below average range with a Full Scale IQ of 83, but was functioning in the high average range of intellectual ability with a perceptual reasoning index of 113. (Tr. 21). The ALJ stated that Dr. Kasprzak diagnosed

the Plaintiff with "depressive disorder, *not otherwise specified due to his reports* of crying daily, being depressed, and having difficulty coping with the loss of his leg." (Tr. 21, emphasis added). However, the ALJ noted that the Plaintiff described daily activities which were not limited to the extent one would expect, given his complaints of disabling symptoms and limitations.  (Tr. 26). The ALJ, using Dr. Kasprzak's report (cited as Exhibit 10F, Tr. 341-51), stated:

> For example, the claimant reported that he was able to take care of his personal needs and grooming independently, and was able to cook, wash dishes by hand, sweep, vacuum, clean the bathroom, change the bed linens, do laundry, go grocery shopping, and watch television.  Further, the claimant stated that he was able to go fishing monthly.  (Exhibit 10F/p.4).  This wide array of daily activities that the claimant is able to perform strongly suggest that the claimant's allegations are not credible to the degree that the claimant would be precluded from all work related activity, and further contradicts his allegations of totally disabling impairments.

(Tr. 26).

Plaintiff's ability to perform these daily activities was inconsistent with his allegation that he is unable to perform basic work activities. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986) (noting that daily activities such as caring for personal needs, visiting a sick aunt, helping his spouse around the house, and carrying out the garbage supported the ALJ's finding that the claimant did not suffer disabling pain).

Additionally, Dr. Kasprzak's Medical Source Statement report opined that the Plaintiff has no limitation in areas of functioning, with exceptions in understanding, remembering, carrying out complex instruction and making judgment on complex work-related decisions, which were opined mild.   (Tr. 21, 349-51).   Dr. Kasprzak opined that the Plaintiff had no limitations in his ability to interact appropriately with supervisors, coworkers or the public and to respond to changes in a routine work setting. (Tr. 21).  Dr. Kasprzak's findings that Plaintiff had no limitations in the areas deemed "basic work activities" under 20 C.F.R. § 404.1521(b)

substantially support the ALJ's decision. Her findings are also consistent with her examination which provides additional evidence to support the ALJ's decision.

Moreover, the ALJ specifically stated that he accorded great weight to Dr. Kasprzak's consultative examination report and accompanying Medical Source Statement because she examined the Plaintiff, spoke with him regarding his impairments and symptoms, performed diagnostic tests on the Plaintiff and reviewed his medical records. (Tr. 21). Dr. Kasprzak's report is consistent with the Medical Source Statement and record as a whole.

Furthermore, the ALJ stated that Dr. Kasprzak's opinion is consistent with the other substantial evidence in the record which supports that Plaintiff's depression is non-severe. The ALJ discussed in detail the four broad functional areas set out in the disability regulations for evaluating mental disorders. (Tr. 21). If there is a medically determinable mental impairment, the degree of functional limitation resulting from such impairment is ascertained. 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). The degree of functional limitation resulting from a medically determinable mental impairment is ascertained by rating four "broad functional areas" in "paragraph B" of the listings: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3) and 416.920a(c)(3); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(C). The first three broad functional areas are rated using a five-point scale: none, mild, moderate, marked, and severe. 20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(C). The fourth is rated using a four-point scale: none, one or two, three, four or more. 20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(C)(4).

After the degree of functional limitation resulting from the claimant's medically determinable mental impairment is rated, the severity of the mental impairment is established. 20 C.F.R. §§ 404.1520a(d) and 416.920a(d). The four broad functional areas "are used to rate the severity of mental impairments at steps [two] and [three] of the sequential evaluation process." SSR 96–8p, 1996 WL 374184, at *4. If the first three of the four broad functional areas are rated "none" or "mild," and the forth area is rated as "none," the Commissioner generally concludes that the impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).

The ALJ found that the Plaintiff had a mild limitation in the first functional area of activities of daily living. (Tr. 21). The ALJ stated:

> The claimant acknowledged to Dr. Rabinowitz that he could perform routine activities of daily living (Exhibit 5F/p.1). The claimant reported that he was able to take care of his personal needs and grooming independently, and was able to cook, wash dishes by hand, sweep, vacuum, clean the bathroom, change the bed linens, do laundry, go grocery shopping, and watch television. Further, the claimant stated that he was able to go fishing monthly. (Exhibit 10F/p.4).

(Tr. 21).

In the second functional area, social function, the ALJ found that the Plaintiff had a mild limitation. (Tr. 21). The ALJ stated many of the Plaintiff's treating and examining physicians have described the Plaintiff as cooperative and pleasant, contrary to the more "mild" limitations in this area of functioning. (Tr. 21). The ALJ stated:

> Specifically, Dr. Rabinowitz noted that the claimant was cooperative and related well to him and his staff (Exhibit 5F). Additionally, Dr. Azizi reported that the claimant had a "pleasant" mood and was sociable (Exhibit 7F/p.3). Further, Dr. Kasprzak described the claimant as cooperative more than "mild" limitation in social functioning, the claimant reported that he had approximately 100 friends, some with weekly telephone contact and visits. The claimant related that his best

friend supported him financially.  (Exhibit 5F/p.3).  The claimant also indicated
that he went fishing monthly.

(Tr. 21).

The ALJ found that the Plaintiff had a mild limitation in the third functional area,

concentration, persistence or pace.  (Tr. 21).  The ALJ stated to this regard that:

> The Medical Source Statement of Dr. Kasprzak supports the finding of only
> "mild" limitations in this area of functioning.  More specifically, Dr. Kaprzak
> concluded that the claimant had no limitations in his abilities to understand,
> remember, and carry out simple instructions and make judgments on simple work-
> related decision, and that the claimant's limitations in understanding,
> remembering, and carrying out complex instructions and making judgments on
> complex work-related decisions were only mild.  This is consistent with her
> medical status examination findings, detailed above, and the finding that the
> claimant functioned in the below average range on intellectual ability (See Exhibit
> 9F/pp.4, 9-10).

(Tr. 21-22).

The ALJ found that the Plaintiff had no limitation in the fourth functional area, episodes

of decompensation.  (Tr. 22).  The ALJ stated that the Plaintiff had not experienced any episodes

of decompensation which have been of extended duration. (Tr. 22). The ALJ found that the

Plaintiff had no more than "mild" limitations in the first three functional areas and "no"

limitations in the fourth functional area. (Tr. 22). Based on these findings, the ALJ determined

Plaintiff's alleged mental impairment of depression was non-severe.    (Tr. 22).    This

determination is in accordance with the Regulations.   See 20 C.F.R. §§ 404.1520a(d)(1) and

416.920a(d)(1) (stating, "[i]f we rate the degree of your limitation in the first three functional

areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your

impairment(s) is not severe . . . ").

A comprehensive review of the record shows that the ALJ's decision that Plaintiff does

not have a severe mental impairment is supported by substantial evidence which the ALJ

properly discussed and addressed.   The ALJ, having appropriately determined that Plaintiff's mental impairment was non-severe, thus properly determined that Plaintiff is not disabled under the Act.   Therefore, the Court affirms the ALJ's decision.

Accordingly, it is now

**ORDERED:**

The decision of the Commissioner is **AFFIRMED.**

The Clerk of the Court is hereby directed to issue a judgment consistent with this ruling and to thereafter **CLOSE** the file.

**DONE AND ORDERED** at Fort Myers, Florida, this 11th day of March, 2013.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies:  All Parties of Record